1841.

Underhill
v.
Dennis.

---

## Underhill *vs.* Dennis, guardian, &c.

The statute which declares that no judge of any court can sit as such in any cause in which he would be excluded from being a juror by reason of affinity or consanguinity to either of the parties, does not apply to cases where the relative of the judge has no personal interest in the subject matter of the litigation.   A surrogate, therefore, may appoint a guardian for an infant, although such surrogate is a relative of the person who is appointed guardian.

Where an application is made to a surrogate for the appointment of a guardian of an infant under fourteen years of age, he should assign a day for the hearing of the application ; and after ascertaining who are the near relatives of the infant residing in the county, he should direct notice to be given to such of them as he may deem reasonable, for the purpose of having the rights of the infant properly attended to upon the application.

And where the application to the surrogate, to appoint a guardian, is not made by one who is nearly related to the infant by affinity or consanguinity, it is the duty of the surrogate to enquire and ascertain whether the infant has any such relatives in the county, who are of sufficient age and capacity

to protect his rights and interests in the selection of a proper guardian, and in obtaining sufficient security from such guardian with reference to the nature and value of the infant's property.

Where the nearest relatives of the infant neither join in the application to the surrogate nor give their consent to the application, the surrogate should direct notice to be given to such and so many of them who are residing in the county as he shall deem necessary to protect the infant's rights and interests on the appointment of the guardian. And he should enter his decision on that subject in the minutes of his proceedings; and require the applicant to furnish evidence of the service of the notices previous to making the appointment.

So where a relative of an infant applies to be appointed his guardian, the surrogate should make the requisite inquiries, and ascertain whether there are any other relatives of the same degree, or who are more nearly related to the infant; and should direct the requisite notices of hearing of the application to be given accordingly.

In case the surrogate errs either in neglecting to make the proper enquiries upon an application to appoint a guardian, or in omitting to direct proper notices to be given to such of the relatives as in the exercise of a sound discretion he ought to have directed to be notified of the application, the appellate court may reverse his decision and set aside the appointment of the guardian.

The fact that the real estate of an infant came to him by descent from his father, and not from his mother, affords no sufficient ground for giving a preference to the paternal relatives of the infant, over the maternal relatives of the same degree of affinity or consanguinity, in the appointment of guardian.

The declared wishes of the deceased parents of an infant, in relation to the manner in which he should be brought up, and as to whose care he should be committed during his infancy, are entitled to much weight in deciding upon the claim of the different relatives to the guardianship of the infant.

It is not necessary in an appeal from an order of the surrogate appointing a guardian, that the appeal should be in the name of the infant as the nominal appellant. But it is proper that he should be made a party to the appeal; especially where there is an appeal from an order of a surrogate removing a guardian, or refusing to appoint the person by whom the appeal is brought.

Where the appeal is from an order appointing a guardian, the appellant may make the infant a party to the petition of appeal jointly with the guardian. But the making of an infant a party is not absolutely necessary in that case; as the guardian appointed by the surrogate must be made a party, and the appellate court can protect the rights of the infant on the appeal although he is not a nominal party thereto, in such a case.

THIS was an appeal from a decision of the surrogate of the county of Cayuga, appointing the respondent the general guardian of the person and estate of Noah W. Dennis, an infant between seven and eight years of age. The only

1841.

Underhill
v.
Dennis.

May 24.

facts which appeared upon the records of the surrogate, as stated in his return, were, that in August, 1840, C. C. Dennis, an uncle of the infant, presented a petition to the surrogate stating the death of the father, the supposed value of the property, and the age of the infant, and praying to be appointed his guardian ; but without stating whether the infant had or had not nearer or other relatives in the county ; that on the same day, and without notice to any relatives of the infant, the surrogate appointed the petitioner such guardian, and took from him security for the performance of the trust ; and that A. M. Underhill appealed from the order of appointment, within six months thereafter, and filed an appeal bond which was approved by the surrogate. But the petition of appeal stated, that the surrogate was a brother in law of the respondent, who was appointed guardian to the exclusion of the appellant, the maternal uncle of the infant ; and that the infant had a maternal grandmother and aunt, and several paternal uncles of the half blood, residing in the county of Cayuga ; none of whom had notice of the application of the respondent to be appointed such guardian. The petition of appeal also showed that the father and mother of the infant belonged to the society of Friends, and that both had, while living, expressed a wish that their child might be brought up in the same faith, and in the business or employment of farming ; that the father died when the infant was about two years of age, leaving a farm worth between four and five thousand dollars in the vicinity of the appellant's residence ; and that the infant and his mother continued to reside in the family of the appellant until the remarriage of the mother in September, 1839 ; that the mother died about ten months after her remarriage, having in her last sickness expressed a desire that the appellant should be appointed the guardian of her infant son, and that he should be brought up a farmer, in the family of the petitioner, and in the religious faith of his parents ; that pursuant to this request Underhill the appellant, a few days after her death, went to the office of the surrogate for the purpose of

procuring himself to be appointed such guardian ; that he notified the respondent of the intended application, who thereupon went with him to the office of the surrogate and there claimed the appointment of guardian for himself ; that the surrogate, after hearing the verbal statements of both parties, decided that as the estate of the infant came to him from his father, the paternal uncle was entitled to the guardianship ; and that about a month afterwards the respondent presented his petition, and procured himself to be appointed guardian, and took the child from the house of the appellant where he was previously residing, in the same family with his grandmother and maternal aunt.

The infant was not made a party to the petition of appeal, and the respondent's counsel therefore, insisted that the appeal should be dismissed. On the part of the appellant, however, it was contended that the statute had authorized the appeal in this form, and that it was not necessary that the appeal should be in the name of the infant ; and that the surrogate, being the brother-in-law of the respondent, had no jurisdiction or authority to act upon the petition of the latter, to appoint him guardian. The appellant's counsel also insisted, that the surrogate not only erred in the principle upon which he acted, in giving a preference to the paternal uncle of the infant, but also in making the appointment ex parte, without assigning a day for the hearing of the application, and directing notice of such hearing to be given to the maternal grandmother and other near relatives of the infant who resided in the county.

*T. Jenkins,* for the appellant.

*D. Wright,* for the respondent.

THE CHANCELLOR. I do not think the appointment of the guardian in this case was absolutely void, upon the ground of the relationship of the surrogate to the person appointed guardian. But it was a case in which the surrogate might very properly have declined acting, on that

ground, and have directed the application to be made to the chancellor or vice chancellor having jurisdiction of the case. The surrogate being a mere statute officer, it is unquestionably within the power of the legislature to prohibit him from acting in any particular case. This court, however, has decided that the statute which declares that no judge of any court can sit, as such, in any cause in which he would be excluded from being a juror, by reason of affinity or consanguinity to either of the parties, does not apply to a case where the relative of the judge has no personal interest in the subject matter of the litigation, or in the decision to be made; as in the appointment of a relative of the judge to be the committee of a lunatic, &c. (*In the matter of Hopper*, 5 *Paige's Rep.* 489.) It is unnecessary, therefore, to examine the question, whether this court can act upon the petition of appeal as an original application for the appointment of a guardian for this infant; upon the ground that the appointment by the surrogate was absolutely void for want of jurisdiction to make it, and that an appeal was unnecessary.

I am satisfied, however, that the decision and appointment by the surrogate was erroneous, whether considered in reference to the merits of the case as stated in the petition of appeal, or to the technical regularity of the proceedings; upon the petition of the respondent, presented to the surrogate in August, 1840, after the decision in favor of the paternal uncle had been in fact made upon the verbal and informal application of the appellant.

Where the infant himself does not apply for the appointment of a guardian, but the application is made by some relative or other person in behalf of the infant on account of his being under the age of fourteen, the statute is imperative, that the surrogate shall assign a day for the hearing of the application, and shall direct such notice of the hearing to be given to the relatives of the minor residing in the county as he shall, upon due inquiry, deem reasonable. (2 *R. S.* 151, § 5.) This provision, as originally enacted in the revised statutes, seems to have borne the

construction that all the relatives of the infant, either by affinity or consanguinity, if they resided in the county, were to be notified of the time and place appointed for the hearing of the application ; and that the surrogate was only to decide upon the reasonableness of the notice. The act of 1837, concerning the proof of wills, &c. has modified the provisions of the revised statutes in this respect, by declaring that the notice shall be required to be served on such relatives only of the minor as the surrogate shall direct. (*Laws of* 1837, *p.* 532, § 44.) This modification, however, does not relieve the surrogate from the duty of making the inquiry contemplated by the revised statutes ; for the purpose of ascertaining who are the relatives of the infant residing in the county, and of directing notice of the application to be given to such and so many of them as may be deemed reasonable for the purpose of having the rights of the infant properly attended to upon the application. Where the application is made by one who is not nearly related to the infant either by affinity or consanguinity, it is the duty therefore of the surrogate to inquire and ascertain whether the infant has any such relatives in the county who are of sufficient age and capacity, to protect the rights and interests of the minor in the selection of a proper guardian, and in obtaining sufficient security from such guardian in reference to the nature and value of the infant's property. And if the nearest relatives of the infant do not·join in the application, or give their consent to the same, the surrogate should direct notice to be given to such and so many of them, who are residing in the county, as he may deem necessary to protect the infant's interest and rights on such application. He should enter his decision on that subject in the minutes of his proceedings, and should require the applicant to furnish the evidence of the service of such notice before he proceeds to make the appointment. So where the application is made by a relative of the infant, the surrogate should make the requisite inquiries, and ascertain whether there are any other relatives related to the infant in the same degree, or

more nearly ; and direct notice of the hearing of the application to be given accordingly.

Here, if the return of the surrogate is to be received as the only evidence of what took place before him, as the respondent's counsel insists it should be, it is evident the surrogate made no inquiries, in the form required by law, to ascertain whether the minor had any other relatives of the same or of a nearer degree of relationship than the applicant. For the petition is entirely silent on that subject ; and the rest of the return of the surrogate, which he states is a correct transcript of all the records and proceedings in his office on this application, contains no evidence that the petitioner or any other person was sworn as to the existence of other relatives of the infant, in that county or elsewhere. And where the surrogate errs, either by neglecting to make the proper inquiries as to who are the relatives of the infant, or in not directing notice to be given to such of the relatives as in the exercise of a sound discretion he should have directed to be notified of the time and place of hearing the application, the appellate court may reverse his decision, and may set aside the appointment of the guardian upon that ground.

Again ; if we are at liberty to look out of the transcript, to the petition of appeal and the answer thereto, for the purpose of connecting the original application of the appellant with this subsequent appointment, so as to render it proper for the surrogate to dispense with any further notice to the maternal relatives of the infant, who all lived together in the same family, I think there is good reason to believe the surrogate has acted upon an erroneous principle, in supposing the paternal uncle was entitled to a preference over the maternal relatives standing in the same degree of relationship to the infant. The fact that the real estate, which constituted all or nearly all of the infant's property, came to him by descent from his father, and therefore would go to his paternal relations in case of his death under age and without issue, affords no grounds whatever for giving a preference to the paternal

1841.

Underhill
v.
Dennis.

relatives in the appointment of the guardian. On the other hand the expressed wishes of both of the deceased parents of the infant, that he should be brought up a farmer, under the care or guardianship of the maternal uncle, in whose family he had lived four or five years, was a circumstance which certainly should not have been overlooked by the surrogate in deciding upon the relative claims of the parties to the guardianship.(a) And if we add to this important fact, that by the appointment of the maternal uncle the infant, during his tender years, would in all probability also have the benefit of the fostering care of his maiden aunt and his widowed grandmother, who constituted a part of the family of the appellant, it is difficult to conceive how the surrogate could have arrived at the conclusion that the appointment of the paternal uncle as guardian would be more beneficial to the infant than the appointment of the appellant; independent of the expressed desire of both parents of the infant that he should be educated in the religious belief in which they lived and died. I think, therefore, the surrogate must have acted on the erroneous supposition, stated in the petition of appeal, that the descent of the property from the father of the infant gave a legal preference to the paternal relatives in the appointment of a guardian of his person and estate.

The statute having authorized any person interested in the allowance or appointment or removal of a guardian, as next of kin or otherwise, to appeal from the decision of the surrogate, it is not absolutely necessary that the appeal should be in the name of the infant as the nominal appellant ; nor that the appellant should have any pecuniary interest, in the appointment or removal of the guardian, to entitle him to institute an appeal in his own name. It is proper, however, that the infant himself should be made a party to the appeal ; especially where the appeal is from an order

---

(a) See *Witty* v. *Marshall*, (23 *Legal Observer*, 125,) decided in November, 1841 ; where V. C. Knight Bruce said the declared will of the deceased father should have been followed in the religious education of the ward.

of the surrogate removing a guardian, or refusing to appoint the person by whom the appeal is brought. (*Kellinger* v. *Roe and others,* 7 *Paige's Rep.* 362.) Even where the appeal is from an order appointing a guardian, if the infant does not himself appeal by his next friend, the appellant may make him a party to the petition of appeal, jointly with the person appointed as guardian by the surrogate. But in that case, as the guardian himself must be made a party, there does not appear to be any absolute necessity for making the infant a party also. For the court may appoint some suitable person to protect his rights, if necessary, although he is not a nominal party to the appeal.

The decision of the surrogate, making the ex parte appointment of the respondent as guardian, without notice to the grandmother of the infant, who was his nearest of kin residing in the county, must be reversed. And it must be referred to the injunction master of the seventh circuit to inquire and report who will be the most proper person to be appointed the guardian of the person and estate of the infant ; and to ascertain and report the amount of the personal estate and the value of the real estate, and also the annual value of the rents and profits of the real estate of the infant ; and to approve two sufficient sureties of the guardian in double the amount of the personal estate and of the gross value or amount of the rents and profits of the real estate during the minority of the infant. And the master is to summon before him and examine the grandmother of the infant, and such other relatives and witnesses as he may think proper, or as either of the parties to the appeal may require, in relation to the subject matter of such reference. Upon the coming in and confirmation of the report, either of these parties, or any other relative of the infant, may apply for such further directions as may be proper in the premises. And until the final decision upon the appointment of the guardian, the infant must be placed under the care and protection of the appellant, as he was previous to the appointment of the guardian by the surrogate. The question as to the costs on the appeal is also

reserved until the coming in of the master's report; which report either party is to be at liberty to except to within eight days after notice that it is filed.