WHITE, appellant, *vs.* POMEROY, respondent.

Where an application is made to a surrogate, for the appointment of a guardian for an infant under fourteen years of age, he should assign a day for the hearing of the application, and direct such notice to be given to the relatives of the infant, residing in the county, as he shall, on due inquiry, think reasonable.

And although the act of 1837 requires notice to be served only on such relatives as the surrogate shall direct, this does not dispense with the duty of making the inquiry as to the relatives of the infant, and of directing notice to be given in proper cases.

The discretion vested in the surrogate, is not an arbitrary one; and if it has been erroneously exercised, the error will be corrected on appeal.

Where the appointment of a person as guardian is invalid, his subsequent appointment as administrator of his ward's father, will also be erroneous, if his

White *v.* Pomeroy.

claim to be appointed administrator rests upon the fact that he has been appointed guardian, and is entitled to administer in the right of his ward; and letters have been issued to him, without any citation or notice to relatives having a prior right to the administration.

THIS was an appeal from two orders made by the county judge of the county of Oswego, acting as surrogate, on the 14th day of May last. By the first of those orders, the respondent Pomeroy was appointed guardian of the person and estate of Marshall Whitman, an infant of five years old; and by the second, he was appointed administrator, &c. of Orange Whitman, deceased, the father of the infant. The facts appear in the opinion.

*H. A. Foster,* for the appellant.

*C. P. Kirkland,* for the respondent.

*By the Court,* GRIDLEY, J. I. As to the order appointing the respondent guardian for the infant. The respondent was the cousin german of the infant, his mother being the sister of the infant's father. The appellant is the maternal uncle of the infant, and resides in the county of Oswego, where the infant himself resides. It was shown by the respondent, in his petition to the surrogate, that his residence was in the county of Ontario, and that the infant had two aunts and three uncles residing in Oswego. The surrogate, immediately, on the same day of the application, without appointing any other day for the hearing, or directing any notice to be given to the relatives of the infant residing in Oswego county, granted an order appointing the applicant the guardian of the person and estate of the infant. This order can not be maintained.

By the fifth section of the act entitled " *Of Guardians and Wards,*" it is made the duty of the surrogate to assign a day for the hearing of such an application ; and to direct such notice to be given to the relatives of the minor residing in the county as he shall on due inquiry, think reasonable. (2 *R. S.* 151.) This provision is modified by the act of 1837. (*Laws of*

VOL. VII.                    81

1837, *p.* 532, § 44,) so as to require the notice to be served only on such relatives as the surrogate shall direct. This does not dispense with the duty of making the inquiry directed in the revised statutes, and of directing notices in proper cases. It does not appear that any inquiry was made by the surrogate in this case. The answer of the respondent, and the return of the surrogate, are silent on this point. But if he did institute the statutory inquiry, he certainly erred in holding that no notice should be given. He was aware that there were five persons in the county of Oswego who stood in a nearer relation to the infant than the petitioner; three of whom would be entitled to the guardianship before him, unless good cause should be shown to the contrary. Now these relatives were entitled to notice, and no ex parte evidence of their unfitness should have been received. It is a most important question, for an infant of the tender age of this ward, who shall have the charge of his education and estate. It depends on the guardian whether he shall be nurtured and trained under such influences and associations as to fit him for a station of respectability and honor in society; or whether he shall be so reared as to be led by bad precept and example to profligacy and ruin. The safeguards, therefore, which the law has thrown around the infant, to prevent an injudicious appointment, must not be disregarded. The discretion vested in the surrogate is not an arbitrary one; and if it have been erroneously exercised, the court will correct the error. (*See Underhill* v. *Dennis*, 9 *Paige*, 202.)

II. The order appointing the respondent administrator of the estate of Orange Whitman, deceased, is also erroneous. He was only entitled to be appointed such administrator, by reason of his being a guardian of the infant. (2 *R. S. p.* 75, § 33.) In truth the petition presented to the surrogate furnishes decisive evidence that the respondent sought to be made a guardian of the infant, in order that, in the character of such guardian, he might obtain the administration of the estate of the deceased. The appointment of the respondent as guardian being invalid, this appointment as administrator becomes equally so. The daughter of the deceased, (whose age is not stated,) and the

White *v.* Pomeroy.

mother of the respondent, and perhaps other relatives, had a prior right to the administration of the estate of the deceased. It is said by the respondent, that his mother had renounced. But of that fact there is no evidence.

No citation to any other relatives was issued, but letters of administration were issued without notice or inquiry, founded, doubtless, on the letter of guardianship which had just been granted in violation of law. We do not wish to be understood as imputing intentional wrong to the respectable gentleman who administers the office of surrogate in the county of Oswego. All we mean to say is, that we think he acted precipitately, and indiscreetly. He did not sufficiently consider that the surrogate's court is one of limited jurisdiction, and that the observance of all the steps made necessary by the statute are indispensable to the validity of an order or decree, in any case, where the proceeding is ex parte.

The only difficulty we perceive, on this branch of the case, is that the appeal is taken from two distinct orders, instead of one; and that the appellant does not show that he has any direct interest authorizing him to appeal. But in the answer of the respondent, no such objection is taken; the question being presented solely upon the validity of the orders which the surrogate has made. We are, therefore, disposed to decide the question upon the merits; leaving all parties to take such proceedings *de novo* before the surrogate, as they shall be advised.

The orders of the surrogate are reversed, with costs, &c.