### *In re* REYNOLDS.

*(Supreme Court, Special Term, Albany County.* December 20, 1889.)

**1. PARENT AND CHILD—CUSTODY—HABEAS CORPUS.**

On *habeas corpus* by a mother to obtain the custody of her minor child, it appeared that by the consent of both parents the child was placed in custody of her paternal grandmother; that at that time the child was in a condition showing great neglect and want of care; that shortly afterwards the parents separated; that the mother had no means of support, except three dollars per week, which the father was compelled to pay her by order of court, and such occasional sums as were donated her by her brothers; and that the child was then nearly seven years old, and well cared for by her grandmother, in whose custody the father wished her to remain. *Held* that, in the absence of notice to the father, who had had no opportunity to explain why he had separated from the mother, or what his subsequent conduct had been, the child would not be removed from the custody of her grandmother.

**2. SAME—RES JUDICATA.**

An order in *habeas corpus* proceedings, awarding to a mother the control of two minor children, one of whom was of such tender years as to require a mother's care, which order does not appear to have been opposed by the father, and to have been made simply on the petition without evidence, and which does not recite the grounds on which it was granted, is not conclusive against the father in a subsequent *habeas corpus* proceeding by the mother to obtain the custody of another child.

**3. SAME—CONSTRUCTION OF STATUTE.**

2 Rev. St. N. Y. p. 148, §§ 1, 2, which provide that where the parents have separated the mother may have *habeas corpus* for minor children, and that the court may award her custody of them, are only permissive, and do not give an absolute right to either parent.

On *habeas corpus* by Mrs. Mary Ann Reynolds, wife of Arthur Reynolds, to obtain the possession of her daughter, Mamie Reynolds, now in the custody of Mrs. Martha Reynolds, mother of Arthur. 2 Rev. St. N. Y. (2d Ed.) marg. p. 148, § 1, provides: "When any husband and wife shall live in a state of separation, without being divorced, and shall have any minor child of the marriage, the wife * * * may apply to the supreme court for a *habeas corpus* to have such minor child brought before it." Section 2 provides: "On the return of such writ, the court * * * may award the charge and custody of the child * * * to the mother, for such time, under such regulations and restrictions, and with such provisions and directions, as the case may require."

*Thomas S. Fagan,* for relator. *Gerald G. Riordan,* for respondent.

LEARNED, P. J Mrs. Mary Ann Reynolds, wife of Arthur Reynolds, brings this proceeding to obtain possession of her daughter, Mamie Reynolds, now in possession of Mrs. Martha Reynolds, mother of Arthur. Arthur and the petitioner were married in June, 1882, and had four children, of whom three are living,—Mamie, aged about six years and eight months; Willie, about five years and eight months; Arthur, about two years nine months. Arthur left his wife, September 1, 1888. There is no evidence of any immorality on her part, but it is evident that for some reason a strong dislike has arisen in his mind against her, and he has not lived with her since. Just before he went away the respondent, Mrs. Martha Reynolds, had been staying for a few days with Arthur and his wife, and by their consent she took Mamie home with her from New York to West Sand Lake, where she resided. Mamie has ever since remained with her, and this has evidently been with the wish and by the consent of the father, Arthur. After Arthur had left his

wife, she caused him to be arrested for failure to support her, and he was finally ordered to pay three dollars per week, which he does. In March, 1889, she asked her husband to take the two other children to see their grandmother, and supposed he had done so. In fact, however, he had taken them to the place where he was living in Brooklyn. The petitioner testifies that in July, 1889, she found him living with another woman, who called herself his wife, and who had a child three weeks old. On July 3, 1889, the petitioner went to West Sand Lake, to the house of the defendant. She was surprised not to find the two children, Arthur and Willie, there. She desired to take Mamie home with her. The grandmother declined to give up possession of the child. Testimony is given showing that when the child was taken by the grandmother it was in a condition showing great neglect and want of care. The petitioner admits that she has taken beer when ordered by a doctor, and that she has sent this child for beer, and has given it to her. The petitioner does no work. She was before marriage a domestic. She is aided in her support by the earnings of two brothers, of whom one boards with her and the other sends her money. After the petitioner returned to New York from West Sand Lake, she took proceedings by *habeas corpus* to obtain possession of Arthur and Willie. Such possession was awarded to her August 14, 1889, with leave to apply for the custody of Mamie.

There is one very serious difficulty in making a final disposition of this case. It is really a contest between the father and the mother as to the control of this child, for the custody of the respondent is by the authority of the father; and yet the father has not been represented here, and has had no opportunity to explain why he separated from his wife, or what was his subsequent conduct. It cannot be said that the respondent in this case so represents the father as to bind him on this hearing, and the time between the issuing of the writ and the hearing has been so short that the father cannot be assumed to have knowledge of this proceeding. Of course, the general rule is that the father is entitled to the custody and control of his children. *Mercein* v. *People*, 25 Wend., at page 73. This general rule the petitioner's counsel does not deny. He asserts in answer two things: (1) That the order of the supreme court in New York city, made August 17, 1889, giving the mother the care of the other two children, is conclusive against the father's rights in the present case. Nothing appears, however, in that order as to the grounds on which it was granted. It does not even appear by the order that the father opposed it. The youngest of the children, at least, was of such tender years that a mother's care might have been thought necessary. The order seems to have been made simply on the petition for a *habeas corpus*, without any evidence; so that, so far as the order shows, there was no adjudication as to the father's character or conduct. It would not be just to conclude, merely from this order, that anything had been decided against him. (2) The petitioner's counsel relies on her own evidence given on this hearing. Now, the same difficulty arises as to this which has been above suggested; that is, that the court has not heard the father's statement as to the matter. No lesson is more strongly taught by judicial experience than this: that the statements and testimony of one side do not correctly present the whole truth. This is especially the case in a controversy of this kind, where it is very probable that some blame rests on each side; and it is much to be regretted that in this controversy means have not been taken to give the father full notice of the matter. It is evident that there is great feeling in regard to the question now presented, and the only testimony given by the petitioner is her own. It is not, however, necessary for the court to decide the question of the conduct of the father; because that does not, at this time, immediately affect the best interests of this child. She has been put, with the father's approval and by his wish, in the family of her grandmother, where she is well cared for. If the father's life is improper, she is separated from contact with it. The wishes of the child

cannot be allowed much weight. She is naturally in sympathy with those with whom she lives, if they treat her kindly. But her manner and appearance are important, as they indicate kind treatment and a happy life. The petitioner's counsel urges that the unwillingness of the child to go with the mother is of itself a reason why the mother should be given the custody; because, he says, this is an unnatural feeling. But it must be remembered that the situation of these parents is itself unnatural. The petitioner admits that she has threatened to shoot her husband. The father, as well as the mother, has a claim to the affections of the child. An education of the child that the father was a person to be shot, would be quite improper.

The counsel for the petitioner further cites 2 Rev. St. marg. p. 148, §§ 1, 2. But these sections are only permissive, and they give no absolute right to either in case the parents live separate. In all such unfortunate controversies between parents, the welfare of the child is an important consideration. The petitioner is earning nothing herself. Her support and that of the other children comes from the three dollars per week paid by the father, and from the generosity of the brothers. If that generosity should grow cold, it is not shown from what source the petitioner would obtain enough for herself and the three children. She could not become a domestic without in some way giving up the custody of the children, and even at present they have no legal claim to the bounty of her brothers. This child is now well cared for, and she is not of those very tender years when a mother's attention is almost necessary. She is in a home where the petitioner has been willing she should stay for some 10 months, and to which she was willing the father should take the other children, at least for a time. It must be then a home where she thought they would be cared for fixedly, and, as already remarked, it is a home approved of by the father. Looking, then, at all these considerations, the court does not think it would be best to remove the child from its present custody. The proceedings, therefore, are dismissed, and the child will be remanded to the custody of the defendant.